# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF NORTH CAROLINA
# EASTERN DIVISION

No. 4:15-CV-147-F

| | |
|---|---|
| TAMATHA ANN JOHNSON, | ) |
| | ) |
| Plaintiff/Claimant, | ) |
| | ) |
| v. | ) **MEMORANDUM AND** |
| | ) **RECOMMENDATION** |
| CAROLYN W. COLVIN, Acting | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

This matter is before the court on the parties' cross-motions for judgment on the pleadings [DE-12, -17] pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Claimant Tamatha Ann Johnson ("Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the denial of her applications for a period of disability, Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") payments. The time for filing responsive briefs has expired and the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, it is recommended that Claimant's Motion for Judgment on the Pleadings be denied, Defendant's Motion for Judgment on the Pleadings be allowed, and the final decision of the Commissioner be affirmed.

## I. STATEMENT OF THE CASE

Claimant protectively filed applications for a period of disability, DIB, and SSI on April 23, 2012, alleging disability beginning October 1, 2011. (R. 11, 206-16). Her claim was denied initially and upon reconsideration. (R. 11, 55-104). A hearing before the Administrative Law Judge ("ALJ") was held on March 19, 2014, at which Claimant, represented by counsel, and a vocational expert

("VE") appeared and testified. (R. 11, 31-49). On May 20, 2014, the ALJ issued a decision denying Claimant's request for benefits. (R. 8-30). On July 31, 2015, the Appeals Council denied Claimant's request for review. (R. 1-6). Claimant then filed a complaint in this court seeking review of the now-final administrative decision.

## II. STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996), *superseded by regulation on other grounds*, 20 C.F.R. § 416.927(d)(2)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

2

## III. DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth

in 20 C.F.R. §§ 404.1520 and 416.920 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). "If an applicant's claim fails

at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65

F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). The burden of proof and production during the

first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ

to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with

the "special technique" described in 20 C.F.R. §§ 404.1520a(b)-(c) and 416.920a(b)-(c). This

regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of

functional limitation resulting from a claimant's mental impairment(s): activities of daily living;

social functioning; concentration, persistence or pace; and episodes of decompensation. *Id.* §§

404.1520a(c)(3), 416.920a(c)(3). The ALJ is required to incorporate into his written decision

pertinent findings and conclusions based on the "special technique." *Id.* §§ 404.1520a(e)(3),

416.920a(e)(3).

## IV. ALJ'S FINDINGS

Applying the above-described sequential evaluation process, the ALJ found Claimant "not

disabled" as defined in the Act. At step one, the ALJ found Claimant had not engaged in substantial

3

gainful activity since the alleged onset date. (R. 13). Next, the ALJ determined Claimant had the following severe impairments: obesity, degenerative disc disease, major depressive disorder, chronic pain, residuals of right foot surgery, anxiety, and headaches. *Id.* However, at step three, the ALJ concluded these impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 13-15). Applying the technique prescribed by the regulations, the ALJ found that Claimant's mental impairments have resulted in moderate difficulties in her activities of daily living, social functioning, and concentration, persistence, or pace, with no episodes of decompensation of an extended duration. (R. 15).

Prior to proceeding to step four, the ALJ assessed Claimant's residual functional capacity ("RFC") finding Claimant has the ability to perform a limited range of light work[1] as follows: lifting and carrying 20 pounds occasionally and 10 pounds frequently; only occasional pushing and pulling with the right lower extremity; standing, walking, and sitting six hours each in an eight-hour work day with a sit and stand option of sitting and standing a maximum of one hour each; occasional climbing of ramps and stairs, and occasional balancing, stooping, kneeling, crouching and crawling; no climbing ladders, ropes, or scaffolds; avoid hazards, such as moving machinery and heights; and understanding, remembering, and carrying out simple instructions, and maintaining concentration, persistence, and pace to perform routine, repetitive tasks. (R. 15-22). In making this assessment,

---

[1] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If an individual can perform light work, he or she can also perform sedentary work, unless there are additional limiting factors such as the loss of fine dexterity or the inability to sit for long periods of time. 20 C.F.R. §§ 404.1567(b), 416.967(b).

4

the ALJ found Claimant's statements about her limitations not entirely credible. (R. 20). At step

four, the ALJ concluded Claimant did not have the RFC to perform the requirements of her past

relevant work. (R. 22). Nonetheless, at step five, upon considering Claimant's age, education, work

experience, and RFC, the ALJ determined Claimant is capable of adjusting to the demands of other

employment opportunities that exist in significant numbers in the national economy. (R. 22-23).

Claimant contends the ALJ erred by (1) finding Claimant's impairments do not meet or

medically equal certain listings, (2) finding Claimant has the RFC to perform a limited range of light

work, and (3) failing to assign appropriate weight to the opinion evidence. Pl.'s Mem. [DE-13] at

6-15.

# V. DISCUSSION

## A. The ALJ's Consideration of the Listings

Claimant contends the ALJ erred by finding Claimant's impairments do not meet or

medically equal Listings 1.02 (Major Dysfunction of a Joint), 1.04 (Disorders of the Spine), 12.04

(Affective Disorders), and 12.08 (Personality Disorders).[2] Pl.'s Mem. [DE-13] at 6-10. The

Commissioner contends the ALJ correctly determined that Claimant's impairments do not meet or

equal a listing. Def.'s Mem. [DE-18] at 6-13.

To show disability under the listings, a claimant may present evidence either that the

impairment meets or is medically equivalent to a listed impairment. *See Kellough v. Heckler*, 785

F.2d 1147, 1152 (4th Cir. 1986); 20 C.F.R. § 404.1526 (regulations for determining medical

---

[2] In the summary of issues presented, Claimant refers to Listings 1.02, 12.04, and 12.06, and in the argument section
heading, Claimant refers to Listings 1.02, 1.06, 12.04, and 12.06. Pl.'s Mem. [DE-13] at 3, 6. However, Claimant
presents no substantive discussion regarding how her impairments meet or equal Listings 1.06 (Fracture of the femur,
tibia, pelvis, or one or more of the tarsal bones) or 12.06 (Anxiety related disorders).

equivalence). Disability is conclusively established if a claimant's impairments meet all the criteria of a listing or are medically equivalent to a listing. 20 C.F.R. § 404.1520(d). "The [ALJ] . . . is responsible for deciding . . . whether a listing is met or equaled." S.S.R. 96-6p, 1996 WL 374180, at *3 (July 2, 1996). In order to determine whether a medical impairment equals a listing, the ALJ is bound to "consider all evidence in [claimant's] case record about [the] impairment(s) and its effects on [claimant] that is relevant to this finding. . . . [The ALJ] also consider[s] the opinion given by one or more medical or psychological consultants designated by the Commissioner." 20 C.F.R. § 404.1526(c). "For a claimant to qualify for benefits by showing that his . . . combination of impairments is 'equivalent' to a listed impairment, he must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment." *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990). "A claimant cannot qualify for benefits under the 'equivalence' step by showing that the overall functional impact of his unlisted impairment or combination of impairments is as severe as that of a listed impairment." *Sullivan*, 493 U.S. at 531. "Plaintiffs bear the burden of proving their condition meets a listing and, accordingly, the responsibility of producing evidence to sustain their claims." *Rowe v. Astrue*, No. 5:07-CV-478-BO, 2008 WL 4772199, at *1 (E.D.N.C. Oct. 28, 2008) (unpublished) (citing *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995)). Thus, where a claimant "fails to articulate why h[is] medical impairments do, in fact, meet all of the elements of a given listed impairment," he fails to meet his burden. *Id.* (citing *Sullivan*, 493 U.S. at 530).

### 1. Listings 1.02 and 1.04

Listing 1.02, entitled "major dysfunction of a joint(s)," consists of two major subparts, Listings 1.02A and 1.02B. If either is satisfied, the claimant is regarded as disabled. Both are characterized by "gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous

6

ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s)." 20 C.F.R. pt. 404, subpt. P, app. 1, § 1.02. Plaintiff's argument cites the criteria for Listing 1.02A, Pl.'s Mem. [DE-13] at 9, which additionally requires "[i]nvolvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b."[3] 20 C.F.R. pt. 404, subpt. P, app. 1, § 1.02A. "Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities," and examples of ineffective ambulation are "the inability to walk without the use of a walker, [or] two crutches or two canes." *Id.* § 1.00B.2.b(1), (2). However, other examples of ineffective ambulation include "the inability to walk a block at a reasonable pace on rough or uneven surfaces" and "the inability to climb a few steps at a reasonable pace with the use of a single hand rail." *Id.* § 1.00B.2.b(2); *Fleming v. Barnhart*, 284 F. Supp. 2d 256, 268 (D. Md. 2003) (noting "if [a claimant] who uses [only] one cane or one crutch is otherwise unable to effectively ambulate, the impairment(s) might still meet or equal a listing") (quoting Revised Medical Criteria for Determination of Disability, Musculoskeletal System and Related Criteria, 66 Fed. Reg. 58,010, 58, 013 (Nov. 19, 2001) ("[W]e do not consider required use of one cane or crutch to automatically exclude all gainful activity. However, if someone who uses one cane or crutch is otherwise unable to effectively ambulate, the impairment(s) might still meet or equal a listing.")).

---

[3] Claimant does not argue that her impairments meet or equal Listing 1.02B, which requires "[i]nvolvement of one major peripheral joint in each upper extremity (i.e., shoulder, elbow, or wrist-hand), resulting in inability to perform fine and gross movements effectively, as defined in 1.00B2c." 20 C.F.R. pt. 404, subpt. P, app. 1, § 1.02B.

Case 4:15-cv-00147-F Document 20 Filed 08/25/16 Page 7 of 27

Claimant cites the following in arguing that her impairments meet or equal Listing 1.02A: bilateral foot pain with a history of surgery; right foot edema; chronic pain; pre-surgery imaging from January 2011 indicating metarsalgia right foot, possible capsulitis second metatarsophalangeal joint, and possible stress fracture right foot; post-surgical diagnosis of chronic metarsalgia with elongated second metatarsal, right foot and second metatarsophalangeal joint deviation and subluxation, right foot; and Claimant's testimony that she uses a cane 95 percent of the time when standing or walking and elevates her foot about 65 percent of the day. Pl.'s Mem. [DE-13] at 9-10 (citing R. 38-40, 338-42, 409-42, 470).

The ALJ found the requirements of Listing 1.02 were not met, noting Claimant's examination findings failed to demonstrate any significant joint deterioration or gait disturbance. (R. 14). In the RFC analysis, the ALJ acknowledged Claimant's history of right foot pain, but also noted that she underwent a successful right second toe osteotomy in August 2012, that by November 2012, Claimant reported doing well with no pain and excellent alignment on x-ray, and that by February 2013, Claimant had good strength and no pain on examination, complete healing on x-ray, reported wearing five-inch heels at times, and was released from care. (R. 17-18). The ALJ noted that in April 2013, Claimant returned for follow up with soreness in her right foot after playing basketball without shoes, an x-ray showed soft tissue inflamation, and she was given special insoles and instructed to wear supportive shoes. (R. 18). The ALJ summarized his determination regarding Claimant's right foot impairment as follows:

Although she had right second toe osteotomy in August 2012, she had excellent recovery with no complaints of pain or difficulty with ambulation. While the claimant testified that she needs a cane for ambulation, there is no evidence that her physicians prescribed or encouraged she utilize a cane and no evidence that she has difficulty ambulating to the degree that she requires a cane.

8

(R. 20).

The ALJ's findings are supported by substantial evidence. The record indicates that Claimant's August 2012 surgery was successful (R. 338-40, 409, 411-16), and while some treatment notes prior to her surgery indicate she used a cane (R. 400-01, 403, 405-06), post-surgical treatment notes throughout the record indicate Claimant had a normal or mildly-antalgic gait without an assistive device (R. 334, 345, 347, 355, 359, 373-74, 376, 472, 477). Finally, the use of a cane in and of itself is not sufficient to demonstrate ineffective ambulation. *See McAuley v. Colvin*, No. 7:12-CV-311-D, 2013 WL 7098724, at \*9 (E.D.N.C. Dec. 13, 2013) (unpublished) ("[A]n inability to ambulate effectively means an inability to ambulate without the use of a device that requires *both* upper extremities" and the "use of a cane does not bring [the claimant] within the ambit of 1.04(C).") (emphasis in the original) (citing 20 C.F.R. pt. 404, subpt. P, app. 1, § 1.00B.2.b(2)). Accordingly, Claimant has failed to demonstrate that her impairments meet or equal Listing 1.02A, where there is no evidence in the record to support that Claimant has demonstrated an inability to ambulate effectively. *See Drotar v. Colvin*, No. 7:13-CV-265-FL, 2015 WL 965626, at \*3 (E.D.N.C. Mar. 4, 2015) (unpublished) ("An impairment that manifests only some of [the listing] criteria, no matter how severely, does not qualify," and to establish equivalence "a claimant must present medical findings equal in severity and duration to all the criteria for a listing") (citations omitted).

Listing 1.04 refers generally to disorders of the spine. 20 C.F.R. pt. 404, subpt., P, app. 1, § 1.04. To satisfy Listing 1.04, a claimant must show a disorder of the spine "(e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord" with one of the following:

9

A.    Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);

OR

B.    Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours;

OR

C.    Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

*Id.*; *see Drotar*, 2015 WL 965626, at *5 (discussing the criteria to meet or equal Listing 1.04).

Claimant cites the following in arguing that her impairments meet or equal Listing 1.04A and 1.04C: degenerative disc disease, chronic neck pain, spondylosis, and bulging discs; an August 8, 2011 MRI indicating C3-C4 with bulging disc, C5-C6 central disc protrusion, L3-L4 right paracentral disc protrusion, L4-L5 concentric stenosis due to bulging disc, and L5-S1 concentric stenosis due to bulging disc with mild bilateral facet degenerative disease; an MRI indicating degenerative disk disease at L4-L5; and Claimant's testimony that she uses a cane 95 percent of the time when standing or walking, that she can only stand for five minutes at a time, and that she can only sit for five to ten minutes at a time due to her pain. Pl.'s Mem. [DE-13] at 9 (citing R. 331-35, 347-408).

The ALJ found Claimant's back and neck impairments did not meet or medically equal Listing 1.04A or 1.04C because there is no evidence of nerve root compression, no positive straight

10

leg raise testing, no significant limitation of motion of the spine, and no gait disturbance. (R. 14). The above evidence cited by Claimant fails to contradict the ALJ's findings in this regard. With respect to Listing 1.04A, Claimant has cited no evidence of nerve root compression, and, therefore, her impairments do not meet the listing. And, as explained above, Claimant has failed to demonstrate an "inability to ambulate effectively," and, therefore, her impairments do not meet Listing 1.04C. "An impairment that manifests only some of [the listing] criteria, no matter how severely, does not qualify." *Drotar*, 2015 WL 965626, at *3 (citing *Sullivan*, 493 U.S. at 530). Claimant has not presented "medical findings equal in severity and duration to all the criteria for a listing." *Id.* (citations omitted). Accordingly, Claimant has failed to demonstrate her impairments meet or equal Listing 1.04A or 1.04C.

## 2. Listings 12.04 and 12.08

Listing 12.04 generally addresses disorders such as depression, mania, and bipolar disorder and is satisfied if an individual meets the A and B criteria, or the C criteria. 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.04. The A criteria require medically documented persistence of depressive syndrome, manic syndrome, or bipolar syndrome, each meeting various requirements. *Id.* The B criteria require a showing of marked restrictions in at least two of the following areas: activities of daily living; social functioning; maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. *Id.* The C criteria require a medically documented history of a chronic affective disorder of at least two years' duration, again meeting various requirements. *Id.*

Listing 12.08 generally addresses personality disorders and is satisfied if an individual meets the A and B criteria. *Id.* § 12.08. The A criteria are

11

Deeply ingrained, maladaptive patterns of behavior associated with one of the following: 1. Seclusiveness or autistic thinking; or 2. Pathologically inappropriate suspiciousness or hostility; or 3. Oddities of thought, perception, speech and behavior; or 4. Persistent disturbances of mood or affect; or 5. Pathological dependence, passivity, or aggressivity; or 6. Intense and unstable interpersonal relationships and impulsive and damaging behavior[.]

*Id.* § 12.08A. The B criteria are identical to those in Listing 12.04. *Id.* § 12.08B.

In arguing her impairments meet Listings 12.04 and 12.08, Claimant cites the following evidence: history of major depressive disorder, panic disorder, and anxiety; symptoms of both depressive and anxiety syndromes for which she has been routinely treated since at least May 2011; documented suicidal ideation; and Claimant's testimony that she suffers from constant crying spells, that 95 percent of the time she stays in her bed clothes all day, that most of the time she stays in bed, only getting out of bed to eat and use the restroom, that if she is having a good day, which is rare, she will get out of bed, and her husband and children do the cooking and cleaning. Pl.'s Mem. [DE-13] at 8 (citing R. 37-38, 42-43, 489-492, 501-509). The ALJ found Claimant's depression and anxiety to be severe impairments, but concluded that they did not meet or equal the severity requirements of Listings 12.04 or 12.06.[4] (R. 13-15). The ALJ did not address Listing 12.08. *Id.* In considering Listing 12.04, the ALJ specifically found the B and C criteria not met. (R. 14-15). Claimant has not challenged the ALJ's finding regarding the C criteria, Pl.'s Mem. [DE-13] at 7-8, and Claimant's failure to establish the B criteria is dispositive here where both the A and B criteria

---

[4] Claimant did not discuss the criteria for Listing 12.06, which addresses anxiety-related disorders. This listing is satisfied if an individual meets the A and B criteria or the A and C criteria. 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.06. The A criteria require, subject to additional specific requirements, medically documented findings of generalized persistent anxiety, a persistent irrational fear, recurrent severe panic attacks, recurrent obsessions or compulsions, or recurrent and intrusive recollections of a traumatic experience. *Id.* The C criteria require the complete inability to function outside the area of one's home as a result of a condition in paragraph A. *Id.* The paragraph B criteria are the same as discussed above. *Id.* Claimant mentions her anxiety but fails to address the A or C criteria. Pl.'s Mem. [DE-13] at 8. Thus, to the extent Claimant challenges the ALJ's findings as to Listing 12.06, she has demonstrated no error.

12

must be met for Listings 12.04 and 12.08.

The ALJ concluded that Claimant had only moderate restrictions in activities of daily living, social functioning, and concentration, persistence, or pace with no episodes of decompensation of an extended duration. (R. 14-15). Claimant does not indicate in which areas she experiences marked limitations. With respect to activities of daily living, the ALJ noted Claimant's testimony that she is independent in self-care, which was corroborated by her husband's third-party assessment (R. 263), that she stays in bed all day on her bad days, but dresses and spends time inside and outside the house on her good days, and that her husband and children cook and clean. (R. 14). With respect to social functioning, the ALJ noted Claimant could attend medical appointments independently, and that Claimant's husband indicated she was able to drive independently, shop with someone accompanying her, and visit with family and friends. *Id.* With respect to concentration, persistence, or pace, the ALJ noted Claimant was able to recite her work history, including the exertional demands, that Claimant's husband indicated she could handle money, pay bills, and complete tasks, and Claimant testified she watched television and sometimes read books. (R. 15). In assessing Claimant's RFC, the ALJ further noted Claimant's depression and anxiety, but that she was being treated with medications that helped (R. 16), and there was "no evidence that the claimant had any diminished cognitive functioning or memory dysfunction that prevented her from understanding and remembering simple instructions or maintaining sufficient concentration, persistence and pace to perform simple, repetitive tasks." (R. 21). The ALJ found that Claimant "has been able to have a reasonable level of interaction with family members and her medical providers," "has never been hospitalized or required emergency treatment for any alleged depressive symptoms, stress intolerance or sleep problems," and only recently sought outpatient mental health treatment. *Id.*

13

The ALJ cited substantial evidence in the record in support of his findings, and the fact that Claimant can point to other evidence that supports her position does not render the ALJ's decision unsupported. *See Hancock v. Astrue*, 667 F.3d 470, 476 (4th Cir. 2012). It is not within the province of the court to reweigh the evidence, even if the court might reach a different result, where the ALJ has considered and analyzed all the relevant evidence and the decision is supported by substantial evidence, as is the case here. *Mastro*, 270 F.3d at 176 (citing *Craig*, 76 F.3d at 589). Accordingly, Claimant has failed to demonstrate error regarding the ALJ's Listing 12.04 determination, and any error in failing to specifically address Listing 12.08 is harmless given that the B criteria analyzed by the ALJ in the context of Listing 12.04 also applies to Listing 12.08. *See Chaple v. Astrue*, No. 5:11-CV-00061-D, 2012 WL 939854, at *9 (E.D.N.C. Feb. 16, 2012) (unpublished) (finding no error in the ALJ's failure to explicitly consider a listing, where "the ALJ's discussion of the evidence and explanation of his conclusions indicate that he sufficiently considered whether Claimant's impairment met or equaled a Listing."), *adopted by* 2012 WL 937260 (E.D.N.C. Mar. 20, 2012).

## B.    The ALJ's RFC Determination

An individual's RFC is the capacity an individual possesses despite the limitations caused by physical or mental impairments. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1); *see also* S.S.R. 96-8p, 1996 WL 374184, at *1 (July 2, 1996). The RFC is based on all relevant medical and other evidence in the record and may include a claimant's own description of limitations arising from alleged symptoms. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3); *see also* S.S.R. 96-8p, 1996 WL 374184, at *5. "[T]he residual functional capacity 'assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions' listed in the regulations." *Mascio v. Colvin*, 780

14

F.3d 632, 636 (4th Cir. 2015) (quoting S.S.R. 96-8p). Where a claimant has numerous impairments, including non-severe impairments, the ALJ must consider their cumulative effect in making a disability determination. 42 U.S.C. § 423(d)(2)(B); *see Hines v. Bowen*, 872 F.2d 56, 59 (4th Cir. 1989) ("[I]n determining whether an individual's impairments are of sufficient severity to prohibit basic work related activities, an ALJ must consider the combined effect of a claimant's impairments.") (citations omitted).

Claimant contends that the ALJ erred in determining that she has the RFC to perform a reduced range of light work, because (1) Claimant's treating physician's assistant, Mr. Lucas, provided an opinion suggesting Claimant has limitations consistent with less than sedentary work, (2) a neurologist, Dr. Patterson, provided an opinion that Claimant's headaches, chronic pain, and depression would preclude basic work activities or gainful employment, and (3) Claimant's testimony, supported by the record, indicates she cannot work. Pl.'s Mem. [DE-13] at 10-15. Defendant responds that the ALJ's RFC assessment is supported by substantial evidence, and the ALJ properly weighed the opinion evidence. Def.'s Mem. [DE-18] at 13-21.

## 1.    The Opinion Evidence

When assessing a claimant's RFC, the ALJ must consider the opinion evidence. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). Regardless of the source, the ALJ must evaluate every medical opinion received. *Id.* §§ 404.1527(c), 416.927(c). In general, the ALJ should give more weight to the opinion of an examining medical source than to the opinion of a non-examining source. *Id.* §§ 404.1527(c)(1), 416.927(c)(1). Additionally, more weight is generally given to opinions of treating sources, who usually are most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability, than non-treating sources such as consultative examiners. *Id.* §§ 404.1527(c)(2),

15

416.927(c)(2). Though the opinion of a treating physician is generally entitled to "great weight," the ALJ is not required to give it "controlling weight." *Craig*, 76 F.3d at 590 (quotations & citations omitted). In fact, "if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Id.*; *see Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992) (stating "[t]he ALJ may choose to give less weight to the testimony of a treating physician if there is persuasive contrary evidence").

If the ALJ determines that a treating physician's opinion should not be considered controlling, the ALJ must then analyze and weigh all of the medical opinions in the record, taking into account the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist. *Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005) (citing 20 C.F.R. § 404.1527). While an ALJ is under no obligation to accept any medical opinion, *see Wireman v. Barnhart*, No. 2:05-CV-46, 2006 WL 2565245, at \*8 (W.D. Va. Sept. 5, 2006) (unpublished), the weight afforded such opinions must nevertheless be explained. S.S.R. 96-2p, 1996 WL 374188, at \*5 (July 2, 1996); S.S.R. 96-6p, 1996 WL 374180, at \*1 (July 2, 1996). An ALJ may not reject medical evidence for the wrong reason or no reason. *Wireman*, 2006 WL 2565245, at \*8. "In most cases, the ALJ's failure to consider a physician's opinion (particularly a treating physician) or to discuss the weight given to that opinion will require remand." *Love-Moore v. Colvin*, No. 7:12-CV-104-D, 2013 WL 5350870, at \*2 (E.D.N.C. Sept. 24, 2013) (unpublished) (citations omitted).

### i.   Medical Source Statement of Mr. Lucas

Mr. Lucas, a physician's assistant, completed a Medical Source Statement on February 7, 2014, indicating Claimant is limited as follows: lifting and/or carrying less than ten pounds; standing and/or walking less than two hours in an eight-hour work day with positional changes every five minutes; sitting less than six hours in an eight-hour work day; and pushing and/or pulling limited by pain with any use of extremities. (R. 493-94). Mr. Lucas stated "subjective history provided by patient" as the basis for his conclusions. (R. 494). Additionally, Mr. Lucas indicated Claimant has postural limitations, including no climbing ramps, stairs, ladders, ropes, or scaffolds and no balancing, kneeling, crawling, or stooping, but listed no basis for these findings. *Id.* With respect to manipulative limitations, Mr. Lucas indicated Claimant was limited to occasional reaching, handling, fingering, and feeling due to "chronic constant pain with all movements." (R. 495). Finally, Mr. Lucas suggested that temperature extremes, vibration, hazards (e.g., machinery and heights), and fumes or odors are likely to exacerbate Claimant's fibromyalgia pain. (R. 496). The ALJ found that Mr. Lucas' opinion was not entitled to the weight given a treating physician or other physician since he is a physician's assistant and further noted that his assessment was not supported by the medical evidence of record, including his own examination reports. (R. 21). The ALJ did not err in evaluating Mr. Lucas's opinion.

Pursuant to the regulations, physicians' assistants are not considered acceptable medical sources. *See* 20 C.F.R. §§ 404.1513(a), (d)(1), 416.913(a), (d)(1) (defining "acceptable medical sources" as licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech-language pathologists). Instead, a physician's assistant qualifies as an "other source," whose opinion is entitled to "significantly less weight." *See Craig*, 76 F.3d at

17

586 (citing 20 C.F.R. §§ 404.1513, 416.913). In fact, Social Security Ruling 06-03p provides that "only 'acceptable medical sources' can give us medical opinions" or "be considered treating sources . . . whose medical opinions may be entitled to controlling weight." 2006 WL 2329939, at *2 (Aug. 9, 2006) (citing 20 C.F.R. §§ 404.1527(a)(2), (d); 416.927(a)(2), (d)). Nonetheless, "evidence from other sources," such as physicians' assistants, may be used "to show the severity of [a claimant's] impairment(s) and how it affects [a claimant's] ability to work." 20 C.F.R. §§ 404.1513(d), 416.913(d). Since medical sources, such as physicians' assistants, "have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians . . . [o]pinions from these medical sources . . . are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file." S.S.R. 06-03p, 2006 WL 2329939, at *3. Indeed, "depending on the particular facts in a case, and after applying the factors for weighing opinion evidence, an opinion from a medical source who is not an 'acceptable medical source' may outweigh the opinion of an 'acceptable medical source,' including the medical opinion of a treating source." *Id.*

Here, the ALJ appropriately found Mr. Lucas's statement was not entitled to the weight otherwise afforded the opinion of an acceptable medical source, where it was based on the subjective history provided by Claimant rather than medical or clinical findings and was not supported by Mr. Lucas's own treatment notes. *See Craig*, 76 F.3d at 590 (finding a conclusory opinion based upon the claimant's subjective reports of pain was entitled to significantly less weight). Mr. Lucas's recent treatment notes from the months prior to issuance of the medical source statement bear no indicia of the extreme limitations contained in his statement. Mr. Lucas saw Claimant in December 2013, and Claimant's chief complaints were listed as "Recheck sugar," "Verified meds, need refill,"

18

"declined flu shot," and "patient having cough, runny and stuffy nose." (R. 482). On physical examination, Claimant was noted to be "well-appearing" and in "no acute distress," with no edema, and there were no positive examination findings listed that would support the limitations in his medical source statement. (R. 484). Mr. Lucas saw Claimant again in January 2014, related to anxiety. (R. 480). Claimant's mental status was "alert and oriented" and her mood/affect was "pleasant." (R. 480-81). Claimant was advised to continue Xanax. (R. 481). Other treatment notes with Mr. Lucas likewise indicate generally unremarkable examinations that fail to support his medical source statement. (R. 443-55). Accordingly, the ALJ did not err in evaluating Mr. Lucas's medical source statement or in failing to incorporate the suggested restrictions into the RFC.

## ii. Opinion of Dr. Patterson

Dr. Patterson, a neurologist, completed a form regarding Claimant's headaches on February 10, 2014. (R. 499-500). Dr. Patterson described Claimant's headaches as aura with some throbbing pain, can be all over head, and pain can be severe, and indicated the presence of photophobia, phonophobia, osmophobia, nausea, and vomiting. (R. 499). Dr. Patterson noted that the reported frequency and duration of Claimant's headaches varied over time from one to three times a week to 12 to 27 days per month and lasted from ten minutes to six to eight hours with medication. *Id.* According to Dr. Patterson, Claimant's headaches are triggered by stress and strong odors and are improved with medications and sleep, but Claimant reported excessive sedation from the medications. (R. 499-500). Dr. Patterson noted that Claimant is still performing basic activities of daily living, helping to care for her in-laws, and having some activities, but indicated that she anticipates headaches, chronic pain, and depression would preclude basic work activities and gainful employment. (R. 500). The ALJ did not address the form completed by Dr. Patterson.

19

Claimant contends the ALJ erred in failing to weigh Dr. Patterson's opinion that headaches, chronic pain, and depression would preclude basic work activities and gainful employment and that Dr. Patterson's opinion is supported by her treatment notes and those of other medical providers. Pl.'s Mem. [DE-13] at 13-14. Defendant argues that Dr. Patterson's statement is not a medical opinion, but rather a statement on an issue reserved for the Commissioner that lacks clinical or diagnostic support, is based on Claimant's subjective complaints, and is unsupported by the treatment notes. Def.'s Mem. [DE-18] at 19-20.

Medical opinions are defined as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis, and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2). "Only those statements . . . that reflect judgments regarding a claimant's prognosis or limitations, or the severity of symptoms," and not those which merely report subjective complaints of the claimant's pain, constitute medical opinions as defined in the regulations. *Love-Moore v. Colvin*, No. 7:12-CV-104-D, 2013 WL 5366967, at *11 (E.D.N.C. Aug. 30, 2013) (unpublished) (citations omitted), *adopted by* 2013 WL 5350870 (E.D.N.C. Sept. 24, 2013). Dr. Patterson's statement that Claimant's headaches, chronic pain, and depression would preclude basic work activities and gainful employment falls within the regulatory definition of a medical opinion because it reflects a judgment about the severity of Claimant's physical and mental restrictions. 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2). Furthermore, Ruling 96-5p explains that while "treating source opinions on issues that are reserved to the Commissioner are never entitled to controlling weight or special significance," they must "never be ignored." S.S.R. 96-5p, 1996 WL

374183, at *2-3 (July 2, 1996). "If the case record contains an opinion from a medical source on an issue reserved to the Commissioner, the adjudicator must evaluate all the evidence in the case record to determine the extent to which the opinion is supported by the record." *Id.* The ALJ's failure to evaluate Dr. Patterson's statement was error. However, under the circumstances presented here, the error is harmless and does not warrant remand.

The ALJ discussed Dr. Patterson's October 17, 2012 and February 10, 2014 treatment notes, citing the significant break in Claimant's treatment with Dr. Patterson. (R. 18, 20). The February 10 treatment note indicates Claimant complained of migraine headaches and was restarted on medication, but there are no examination findings and, likewise, Dr. Patterson's opinion issued the same day largely reflects Claimant's subjective complaints. (R. 20, 497-500). Dr. Patterson's opinion was also based on Claimant's chronic pain and depression, for which she was not treating Claimant. (R. 500). Thus, several factors utilized in evaluating opinion evidence, including examining relationship, treatment relationship, and supportability, would militate against affording much weight to Dr. Patterson's opinion. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c). Furthermore, the ALJ acknowledged Claimant's testimony that she experiences migraine headaches three or four days a week, lasting up to one day, but noted that records showed Claimant reported improvement in the frequency of her migraines with medication treatment (R. 20, 348, 459, 473, 478), and, as the ALJ noted, Dr. Patterson restarted Claimant on medication (R. 497). Finally, although Claimant states that she was routinely treated at multiple facilities for her headaches, Pl.'s Mem. [DE-13] at 14, the records she cites largely fail to support this assertion and merely note that Claimant was followed by Dr. Patterson for her headaches (R. 443-48, 466-69, 480-88). The treatment notes cited by Claimant from July and November 2011, prior to when Claimant began treatment with Dr.

21

Patterson, indicate Claimant's headaches were stable, she reported a decrease in frequency, and that her headaches were controlled. (R. 458-59, 463). There is no reason to believe that remand for further consideration of Dr. Patterson's opinion would change the Commissioner's decision and, thus, it would be futile to reverse and remand the case for failure to assign weight to Dr. Patterson's opinion. *See Tanner v. Comm'r of Soc. Sec.*, 602 F. App'x 95, 101 (4th Cir. Feb. 12, 2015) (unpublished) (concluding that "reversing the ALJ's decision solely because he failed to assign weight to [the doctor's] opinion would be pointless" where the court found "it is highly unlikely, given the medical evidence of record, that a remand to the agency would change the Commissioner's finding of non-disability.").

## 2. Credibility

In addition to the medical opinions, Claimant relies on her own testimony in arguing that the ALJ erred in determining she had the RFC to perform a reduced range of light work. Pl.'s Mem. [DE-13] at 11. Claimant cites her testimony that she is unable to work due to fibromyalgia, fatigue, insomnia, depression, difficulty concentrating and focusing, crying spells, pain and swelling in her right foot, migraines, and hip pain and back pain, that she is only able to stand for five minutes and sit for five to ten minutes before she has to shift position because of her pain, that she uses a cane in her dominant right hand about 90 to 95 percent of the time for standing and walking, and that she suffers from migraines about four to five times a week that last anywhere from a day to three to four days. *Id.* (citing R. 33-43).

When assessing a claimant's RFC, it is within the province of the ALJ to determine a claimant's credibility. *See Shively v. Heckler*, 739 F.2d 987, 989-90 (4th Cir. 1984) ("Because he had the opportunity to observe the demeanor and to determine the credibility of the claimant, the

ALJ's observations concerning these questions are to be given great weight.") (citation omitted). Federal regulations 20 C.F.R. §§ 404.1529(a) and 416.929(a) provide the authoritative standard for the evaluation of subjective complaints of pain and symptomology, whereby "the determination of whether a person is disabled by pain or other symptoms is a two-step process." *Craig*, 76 F.3d at 593-94. First, the ALJ must objectively determine whether the claimant has medically documented impairments that could cause his or her alleged symptoms. S.S.R. 96-7p, 1996 WL 374186, at \*2 (July 2, 1996); *Hines v. Barnhart*, 453 F.3d 559, 564 (4th Cir. 2006). If the ALJ makes this first determination, he must then evaluate "the intensity and persistence of the claimant's pain[,] and the extent to which it affects her ability to work," *Craig*, 76 F.3d at 595, and whether the claimant's statements are supported by the objective medical record. S.S.R. 96-7p, 1996 WL 374186, at \*2; *Hines*, 453 F.3d at 564-65. Objective medical evidence may not capture the full extent of a claimant's symptoms, so where the objective medical evidence and subjective complaints are at odds, the ALJ should consider all factors "concerning the individual's functional limitations and restrictions due to pain and other symptoms." S.S.R. 96-7p, 1996 WL 374186, at \*3 (showing the complete list of factors). The ALJ may not discredit a claimant solely because his or her subjective complaints are not supported by objective medical evidence. *See Craig*, 76 F.3d at 595-96. But neither is the ALJ required to accept the claimant's statements at face value; rather, the ALJ "must make a finding on the credibility of the individual's statements based on a consideration of the entire case record." S.S.R. 96-7p, 1996 WL 374186, at \*2; *see also Taylor v. Astrue*, No. 5:10-CV-263-FL, 2011 WL 1599679, at \*4-8 (E.D.N.C. Mar. 23, 2011) (unpublished) (finding the ALJ properly considered the entire case record to determine that claimant's subjective complaints of pain were not entirely credible), *adopted by* 2011 WL 1599667 (E.D.N.C. Apr. 26, 2011).

23

After summarizing Claimant's testimony and the medical evidence (R. 16-20), the ALJ

determined Claimant's statements concerning the intensity, persistence, and limiting effects of her

symptoms were not entirely credible, explaining as follows:

> In terms of the claimant's alleged neck pain, pain in her shoulders and back pain, pain all over her body, right foot pain, migraine headaches, and obesity, the evidence shows her pain and other symptoms are fairly well controlled with conservative treatment. Records of her orthopedic examinations show the claimant had some spinal tenderness, but no abnormal spinal alignment and a normal gait. She was able to bend from the waist to 70 degrees and she had full range of motion in her hips, knees, ankles and digits. Her MRI showed some mild disc bulging C3-5 and protrusion CS-6 in the cervical spine, while her lumbar spine showed mild DDD L4-5. She had no disc herniation or nerve root compression. Although she had some diminished sensation to light touch in her left upper extremity, she had normal gait and normal sensory findings in her lower extremities. She twisted her right leg and ankle in June 2012. Her right ankle x-ray showed calcaneal spurs, but no fracture or deformity. Although she had right second toe osteotomy in August 2012, she had excellent recovery with no complaints of pain or difficulty with ambulation. While the claimant testified that she needs a cane for ambulation, there is no evidence that her physicians prescribed or encouraged she utilize a cane and no evidence that she has difficulty ambulating to the degree that she requires a cane. Her physicians have placed no limitations on her activity. The claimant testified that she has migraine headaches three or four days per week, lasting up to one day. However, records showed the claimant reported improvement in the frequency of her migraines with medication treatment. In fact, there is significant break in treatment records from Dr. Patterson, which showed the claimant treated in October 2012 and no further medical treatment until February 2014. Dr. Patel reported that the claimant was encouraged to do physical therapy or aquatic therapy, and do aerobic exercises, but she declined other treatment modalities.

> . . . .

> There is no evidence that the claimant had any diminished cognitive functioning or memory dysfunction that prevented her from understanding and remembering simple instructions or maintaining sufficient concentration, persistence and pace to perform simple, repetitive tasks. She has been able to have a reasonable level of interaction with family members and her medical providers. Furthermore, the claimant has never been hospitalized or required emergency treatment for any alleged depressive symptoms, stress intolerance or sleep problems. She only recently sought outpatient mental health treatment.

24

While Claimant generally states that her testimony is "strongly supported by the record, as all of the symptoms she has testified to experiencing have been repeatedly documented in her medical records," Pl.'s Mem. [DE-13] at 11, she fails to point to any specific evidence that contradicts the ALJ's reasons for finding her statements not entirely credible. As discussed above, the ALJ acknowledged Claimant's testimony that she needs a cane for ambulation, but found no evidence that her physicians prescribed or encouraged her to utilize a cane and no evidence that she has difficulty ambulating to the degree that she requires a cane, and the ALJ found that Claimant's depression, anxiety, and migraines showed improvement and were well-managed with medications. (R. 16, 20). The ALJ cited evidence in the record indicating that in February 2013, Claimant was "overall functional with medications" and experienced no significant side effects from her medications. (R. 18, 347). While Claimant reported increased pain with activity at that time (R. 347), in April 2013, Claimant reported soreness in her foot after playing basketball without shoes (R. 18, 470), which undermines her testimony regarding the severity of her limitations. The ALJ, in accordance with Ruling 96-7p, properly considered the entire case record in making a credibility finding and the determination is supported by substantial evidence. *See Mickles v. Shalala*, 29 F.3d 918, 929 (4th Cir. 1994) ("Subject only to the substantial evidence requirement, it is the province of the [ALJ], and not the courts, to make credibility determinations."). Accordingly, Claimant's testimony does not undermine the ALJ's RFC assessment.

In sum, the ALJ appropriately considered Claimant's testimony, the medical evidence, and the opinion evidence in determining Claimant's RFC, providing "a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the

record evidence." *Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013) (citing *Hines*, 872 F.2d at 59). Accordingly, the Commissioner's decision should be affirmed.

## VI. CONCLUSION

For the reasons stated above, it is RECOMMENDED that Claimant's Motion for Judgment on the Pleadings [DE-12] be DENIED, Defendant's Motion for Judgment on the Pleadings [DE-17] be ALLOWED, and the decision of the Commissioner be affirmed.

IT IS DIRECTED that a copy of this Memorandum and Recommendation be served on each of the parties or, if represented, their counsel. Each party shall have until **September 8, 2016** to file written objections to the Memorandum and Recommendation. The presiding district judge must conduct his or her own review (that is, make a de novo determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.*, 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C. Any response to objections shall be filed within **10 days** of the filing of the objections.

**If a party does not file written objections to the Memorandum and Recommendation by the foregoing deadline, the party will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, the party's failure to file written objections by the foregoing deadline will bar the party from appealing to the Court of Appeals**

from an order or judgment of the presiding district judge based on the Memorandum and

Recommendation. *See Wright v. Collins*, 766 F.2d 841, 846-47 (4th Cir. 1985).

SUBMITTED, this the **25** day of August 2016.

Robert B. Jones Jr.

United States Magistrate Judge