IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

No. 4:15-CV-00147-F

| | | |
|---|---|---|
| TAMATHA A. JOHNSON, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | <u>ORDER</u> |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| Defendant. | ) | |

Before the court are the following:

> (1) the Memorandum and Recommendation ("M&R") [DE-20] of United States Magistrate Judge Robert B. Jones, Jr.; and
> (2) the parties' cross Motions for Judgment on the Pleadings [DE-12, -17], pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

The issues have been fully briefed, and the matter is now ripe for ruling. For the reasons addressed below, this court ADOPTS the findings and recommendations of the Magistrate Judge, Plaintiff's Motion for Judgment on the Pleadings [DE-12] is DENIED, Defendant's Motion for Judgment on the Pleadings [DE-17] is ALLOWED, and the Commissioner's final decision is AFFIRMED.

## I. Discussion

### A. Magistrate Judge's M&R

#### 1. Legal Standard

The Magistrate Judge makes only a recommendation to this court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the court. *See Mathews v. Weber*, 423 U.S. 261, 270-71 (1976). This court is charged with making a

*de novo* determination of those portions of the recommendation to which specific objections are made, and the court may accept, reject, or modify, in whole or in part, the Magistrate Judge's recommendation, or recommit the matter to the Magistrate Judge with instructions. *See* 28 U.S.C. § 636(b)(1). In the absence of a timely-filed objection, a district court need not conduct a *de novo* review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005).

On August 25, 2016, the Magistrate Judge issued a M&R, in which he recommended that Plaintiff's Motion for Judgment on the Pleadings [DE-12] be DENIED, Defendant's Motion for Judgment on the Pleadings [DE-17] be ALLOWED, and the Commissioner's final decision be AFFIRMED. The Magistrate Judge advised the parties of the procedures and requirements for filing objections to the M&R and the consequences if they failed to do so. On September 8, 2016, Plaintiff filed Objections [DE-21] to the Magistrate Judge's M&R. Defendant filed a Response [DE-22] on September 16, 2016.

**2. Plaintiff's Objections**

**a. The Magistrate Judge erred in finding that the ALJ's failure to address Dr. Patterson's February 10, 2014 opinion was harmless error.**

In her first objection, Plaintiff argues that the Magistrate Judge erred in finding that the Administrative Law Judge ("ALJ") committed harmless error when he failed to address Dr. Patterson's February 10, 2014 opinion. *See* Objections [DE-21] at 3-4.

On February 10, 2014, Shawnna Patterson, M.D., a neurologist, completed a form for Plaintiff regarding her headaches. (R. 499-500). Dr. Patterson described Plaintiff's headaches as

2

follows: involve aura with some throbbing, can include pain all over her head, cause photophobia, phonophobia, osmophobia, nausea, and vomiting. (R. 499). When asked about the frequency of the headaches, Dr. Patterson noted that Plaintiff's reports had varied over a year and a half, with initial reports of three times per week, later visits with reports of headaches one to two times per week, and finally with reports of headaches twelve to twenty-seven times per month. *Id.* Dr. Patterson opined that Plaintiff's headaches were triggered by stress and strong odors. *Id.* Dr. Patterson further opined that medication and sleep made Plaintiff's headaches better. (R. 500). Dr. Patterson noted that emotional factors contributed to the severity of Plaintiff's headaches. *Id.* When asked whether Plaintiff's headaches precluded her from performing even basic work activities, Dr. Patterson responded, "No." *Id.* Dr. Patterson explained that Plaintiff could still perform basic activities of daily living and could help care for her in-laws, but Dr. Patterson also indicated that Plaintiff's headaches, chronic pain, and depression precluded basic work activities and gainful employment. *Id.* The ALJ addressed Dr. Patterson's other medical notes, but he did not address this February 10, 2014 opinion.

With respect to the February 10, 2014 opinion, the Magistrate Judge concluded that Dr. Patterson's statement that Plaintiff's headaches, chronic pain, and depression would preclude basic work activities and gainful employment falls within the regulatory definition of a medical opinion because it reflects a judgment about the severity of Plaintiff's physical and mental restrictions. *See* M&R [DE-20] at 20 (citing 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2)). The Magistrate Judge further referenced Social Security Ruling ("SSR") 96-5p, which provides that "treating source opinions on issues that are reserved to the Commissioner are never entitled to controlling weight or special significance." *Id.*

3

As the Magistrate Judge pointed out, the ALJ addressed Dr. Patterson's October 17, 2012 and February 10, 2014 treatment notes and specifically noted the significant break in Plaintiff's treatment with Dr. Patterson. *Id.* at 21(citing R. 18, 20). Further, the February 10, 2014 treatment note indicates Plaintiff complained of migraine headaches and was restarted on medication, but there were no examination findings. *Id.* Thus, Dr. Patterson's opinion from the same date as the opinion reflects Plaintiff's subjective complaints. *Id.*(citing R. 20, 497-500). Dr. Patterson's February 10, 2014 opinion was also based on Plaintiff's chronic pain and depression, conditions Dr. Patterson was not treating. *Id.*(citing R. 500).

The Magistrate Judge referred to Plaintiff's testimony that she experiences migraine headaches three or four days a week, lasting up to a day in duration, but he noted the records show that she reported improvement in the frequency of her migraines with medication treatment. *Id.* at 21(citing R. 20, 348, 459, 473, 478). The Magistrate Judge further noted that Plaintiff claimed she was treated at multiple facilities for her headaches, Pl's Mem. [DE-13] at 14, yet the records she cited mostly failed to support this contention and merely revealed that she was followed by Dr. Patterson for her headaches. *Id.*(citing R. 443-48, 466-69, 480-88). Notably, the Magistrate Judge found that the treatment notes cited by Plaintiff from July and November of 2011, prior to the time she was treated by Dr. Patterson, indicate her headaches were stable, there was a decrease in frequency, and the headaches were controlled. *Id.* at 21-22 (citing R. 458-59, 463).

The Magistrate Judge concluded that the ALJ's failure to evaluate Dr. Patterson's February 10, 2014 opinion was error, but the error was harmless and did not warrant remand. *Id.* at 21. The Magistrate Judge specifically determined there was no reason to believe that remand

4

for consideration of Dr. Patterson's February 10, 2014 opinion would change the Commissioner's decision. *Id.* at 22. This court agrees.

Initially, while Plaintiff attempts to give the impression that Dr. Patterson's opinion in toto was disregarded, this is not the case. In fact, only the February 10, 2014 opinion was overlooked. The ALJ actually addressed Dr. Patterson's office note from the *same date*. (R. 20, 497-98). While Plaintiff argues that the Magistrate Judge did not follow the relevant law applicable to a treating source, this does not appear to be the case.

The relevant law provides that an opinion from a medical source on the ultimate issue of disability and other issues reserved to the Commissioner is not entitled to any special weight based on their source. *See* 20 C.F.R. §§ 404.1527(d). 416.927(d); SSR 96-5p, 1996 WL 374183, at *2, 5. However, such an opinion must still be evaluated and accorded appropriate weight. *See* SSR 96-5p, 1996 WL 374183, at *3 ("[O]pinions from any medical source on issues reserved to the Commissioner must never be ignored. The adjudicator is required to evaluate all evidence in the case record that may have a bearing on the determination or decision of disability, including opinions from medical sources about issues reserved to the Commissioner.").

In this case, the Magistrate Judge correctly found Dr. Patterson's opinion that Plaintiff's headaches, chronic pain, and depression would *preclude basic work activities and gainful employment* was an opinion from a medical source on the ultimate issue of disability. *See* M&R [DE-20] at 20 (citing R. 21-22). The Magistrate Judge concluded that there was no reason to believe that remand for further consideration of Dr. Patterson's opinion would change the Commissioner's decision. *Id.* at 22. This court agrees and concludes that Dr. Patterson's opinion, aside from making an opinion on an issue reserved to the Commissioner, also contains

5

information which undercuts Plaintiff's position. Specifically, Dr. Patterson's February 10, 2014 opinion notes that Plaintiff is able to perform activities of daily living, so much so that she is able to help care for others, her in-laws. (R. 500). For all these reasons, Plaintiff's first objection is overruled.

### b. The Magistrate Judge erred in finding the ALJ accorded proper weight to John Lucas PA-C.

Plaintiff argues in her second objection that the Magistrate Judge erred in finding that the ALJ accorded proper weight to the opinion of John Lucas, PA-C, Plaintiff's "treating" physician's assistant. *See* Objections [DE-21] at 4-6.

Lucas, a physician's assistant with Rocky Mount Family Medical Center, completed a medical source statement checklist form on February 7, 2014. (R. 493-96). Lucas opined that Plaintiff could occasionally lift and/or carry (including upward pulling) ten pounds and frequently lift and/or carry (including upward pulling) less than ten pounds. (R. 493). Lucas further opined that Plaintiff could stand and/or walk less than two hours in an eight-hour workday, and she requires positional changes every five minutes. (R. 494). Lucas found that Plaintiff could sit for less than six hours in an eight-hour workday. *Id.* Lucas further found that pushing and/or pulling were affected by her impairment, and she is limited in upper and lower extremities.[1] *Id.* Specifically, Plaintiff experiences pain with *any* use of her extremities. *Id.* Lucas found that Plaintiff could never climb, balance, kneel, crawl, or stoop. *Id.* Lucas further found that Plaintiff's abilities to reach in all directions, handle, finger, and feel were all limited. *Id.* at 495. Lucas opined that Plaintiff could occasionally reach, handle, finger, and feel. *Id.*

---

[1] Lucas specifically noted that these limitations came from subjective history provided by Plaintiff. (R. 494).

6

According to Lucas, Plaintiff suffers constant pain with "all" manipulative functions. *Id.* Finally, Lucas noted that temperature extremes, vibration, hazards (e.g., machinery and heights), and fumes or odors are likely to exacerbate Plaintiff's fibromyalgia pain. *Id.* at 496.

The court notes that because Lucas is a physician's assistant, he is not considered an acceptable medical source for providing a treating source medical opinion. *See* 20 C.F.R. §§ 404.1513(a), (d)(1), 416.913(a), (d)(1); SSR 06-03p, 2006 WL 2329939, at *2 (providing that only acceptable medical sources are deemed treating sources, whose medical opinions may be entitled to controlling weight and noting that physician's assistants are not acceptable medical sources). Rather, a physician's assistant, as an "other source," is entitled to "significantly less weight." *Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996). Evidence from other sources may be used "to show the severity of [a claimant's] impairment(s) and how it affects [his or her] ability to work." 20 C.F.R. §§ 404.1513(d), 416.913(d).

In this case, the ALJ found that Lucas' opinion was not entitled to the weight given to a treating physician or other physician because he is a physician's assistant. (R. 21). The ALJ further found that Lucas' assessment was not supported by the medical evidence of record, including his own examination reports. *Id.*

The Magistrate Judge concluded that the ALJ appropriately found that Lucas' statement was not entitled to the weight afforded the opinion of an acceptable medical source, where it was based on the subjective history provided by Plaintiff rather than medical or clinical findings and was not supported by Lucas' own treatment notes. *See* M&R [DE-20] at 18. As the Magistrate Judge pointed out, when Lucas saw Plaintiff in December 2013, she was found to be "well-appearing" and in "no acute distress." *Id.* at 19 (citing R. 484). There were absolutely no

7

Case 4:15-cv-00147-F Document 23 Filed 09/19/16 Page 7 of 15

positive findings that supported the extreme limitations contained in Lucas' medical source statement. *Id.* The Magistrate Judge also pointed out that Plaintiff's treatment notes with Lucas revealed generally unremarkable examinations that simply did not support Lucas' medical source statement. *Id.* (citing R. 443-55).

A thorough review of Lucas' treatment records reveals the following: Plaintiff was seen by Lucas on March 14, 2012. (R. 453-55). At that time, Lucas noted that Plaintiff was "doing well" and was "without complaints." (R. 453.) Plaintiff was directed to follow up in six months for anxiety. (R. 455).

Lucas saw Plaintiff again on June 7, 2012 for a right leg injury. (R. 449-50). Lucas noted no fracture was seen on the x-rays, but Plaintiff would given crutches for comfort. (R. 450).

Plaintiff saw Lucas on October 31, 2012. (R. 447-448). Plaintiff's chief complaint was migraine headaches. (R. 447). The only physical findings were "well-appearing, no acute distress." (R. 448). Lucas concluded that he would follow up with Plaintiff in six months for anxiety. *Id.*

Lucas saw Plaintiff again on August 2, 2013. (R. 443-44). At that time, Plaintiff was complaining of anxiety and stress from the purchase of a home and a move. (R. 443). Lucas found that she was in "no acute distress." *Id.* Plaintiff was given a referral to Medical Park Psychiatric Associates for counseling, and she was to return in four months to recheck her sugar. (R. 444).

Plaintiff was seen again on April 30, 2013. (R. 445-46). Plaintiff reported experiencing anxiety related to a home purchase and move. (R. 445). The only diagnosis was anxiety, and Plaintiff was found to be in "no acute distress." (R. 446).

8

Lucas saw Plaintiff again on December 6, 2013. (R. 482-84). At that time, Plaintiff presented with a cough and a runny nose. (R. 482). Plaintiff's physical examination revealed a general appearance that was "well-appearing, no acute distress." (R. 484). Lucas directed follow up in six months for a recheck of Plaintiff's lipids and sugar. *Id.*

Plaintiff was seen on January 17, 2014. (R. 480-81). Plaintiff presented with anxiety. (R. 480). Plaintiff was found to be "well-appearing, no acute distress." *Id.* Plaintiff's diagnosis was depression with anxiety. (R. 481).

As the above reflects, the Magistrate Judge correctly found that Lucas' examinations were generally unremarkable and utterly fail to support his extremely restrictive medical source statement. The Magistrate Judge correctly found that the ALJ did not err in his evaluation of Lucas' medical source statement or in failing to incorporate his extreme limitations into the residual functional capacity ("RFC") finding. Consequently, Plaintiff's second objection is overruled.

### c. The Magistrate Judge erred in concluding that the ALJ's finding that Plaintiff can perform a limited range of light work was supported by substantial evidence.

In her third objection, Plaintiff argues that the Magistrate Judge erred in confirming the ALJ's decision she could do a limited range of light work. *See* Objections [DE-21] at 6-9. According to Plaintiff, the ALJ's RFC finding is not supported by substantial evidence because she is unable to work at any exertional level due to chronic severe pain, headaches, and weakness. *Id* at 6-7. In particular, Plaintiff argues that the ALJ erred in failing to adopt the limitation found by Lucas that she would need to change positions every five minutes, a limitation supported by her credible testimony. *Id.* (citing R. 494).

9

RFC is the measurement of the most a claimant can do despite his or her limitations. *Hines v. Barnhart*, 453 F.3d 559, 562 (4th Cir. 2006); *see* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." *Hall v. Harris*, 658 F.2d 260, 265 (4th Cir. 1981). The ALJ is to determine RFC only after considering all the relevant evidence of a claimant's impairments and any related symptoms, such as pain. *Hines*, 453 F.3d at 562-63.

In this case, the ALJ determined that Plaintiff's RFC allowed her to perform a limited range of light work[2], to include the following: lifting and carrying twenty pounds occasionally and ten pounds frequently, pushing and pulling as shown for lifting and carrying, except only occasionally pushing and pulling with the right lower extremity. (R. 15). Plaintiff can stand, walk and sit for six hours in an eight-hour workday with a sit and stand option of sitting and standing a maximum of one hour each. *Id.* Plaintiff can also perform occasional climbing of

---

[2] "Light work" is defined as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. §§ 404.1567(b), 416.967(b).

ramps and stairs and occasional balancing, stooping, kneeling, crouching, and crawling. *Id.* Plaintiff should never climb ladders, ropes, or scaffolds. *Id.* Plaintiff should avoid hazards such as moving machinery and heights. *Id.* Plaintiff is capable of understanding, remembering, and carrying out simple instructions and maintaining concentration, persistence and pace to perform routine, repetitive tasks. *Id.* In making this RFC finding, the ALJ concluded that while Plaintiff's medically determinable impairments could reasonably be expected to cause the symptoms she alleged, her statements concerning the intensity, persistence, and limiting effects of the symptoms were "not entirely credible." (R. 20).

When making a credibility determination of a claimant's allegations of pain, the Fourth Circuit Court of Appeals has set forth a two-part test. *Craig v. Chater*, 76 F.3d 585, 594-95 (4th Cir. 1996). Initially, the claimant must make a threshold showing of a medically determinable impairment that could reasonably be expected to cause the pain alleged. *Id.* at 594. Next, the intensity and persistence of the claimant's pain, including the extent to which it affects his or her ability to work, must be evaluated. *Id.* at 595.

The court is cognizant of its role to review the evidence relied upon by the ALJ and determine if the ALJ relied on substantial evidence when making his credibility determination. *See Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (holding that when the court reviews for substantial evidence, it should not re-weigh evidence that conflicts, make a credibility determination, or substitute its own judgment for that of the Commissioner). As discussed above, Lucas' extreme limitations are not supported by his treatment notes. Moreover, the Law Judge appropriately found that Plaintiff's statements regarding the intensity, persistence, and limiting effects of her symptoms were "not entirely credible." (R. 20). As the Magistrate Judge pointed

11

out, the ALJ acknowledged that Plaintiff testified that she needs a cane for ambulation, yet there was no evidence that her physicians prescribed or encouraged her to utilize a cane, there is no evidence she had difficulty walking to the degree that a cane would be required, and Plaintiff's depression, anxiety, and migraines showed improvement and were well-managed with medication. *See* M&R [DE-20] at 25 (citing R. 16, 201).

In sum, the Magistrate Judge's conclusions with regard to Plaintiff's RFC and credibility are supported by substantial evidence. Consequently, Plaintiff's third objection is overruled.

### d. The Magistrate Judge erred in finding that the ALJ correctly found that Plaintiff does not meet or medically equal Listings 12.04 and 12.06.

Plaintiff's argues in her fourth objection that the Magistrate Judge erred in finding that she does not meet or medically equal Listings 12.04 (Affective Disorders) and 12.06 (Anxiety Related Disorders). *See* Objections [DE-21] 9-11.

The ALJ found that Plaintiff's depression and anxiety were severe impairments[3], but he concluded that they did not meet or medically equal the severity of the requirements of Listings 12.04 or 12.06. (R. 13-15).

Consistent with 20 C.F.R. §§ 404.1520a, 416.920a, the ALJ evaluated the severity of Plaintiff's mental impairments. (R. 14-15). The four broad functional areas-(1) activities of daily living, (2) social functioning, (3) concentration, persistence, or pace, and (4) episodes of decompensation-are known as the "paragraph B" criteria for Listings 12.04 and 12.06. (R. 14).

---

[3] A "severe" impairment is one that significantly limits the claimant's physical or mental abilities to perform basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). An impairment can be considered "not severe" "only if it is a *slight abnormality* which has such a *minimal effect* on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." *Evans v. Heckler*, 734 F.2d 1012, 1014 (4th Cir. 1984) (citation omitted).

Case 4:15-cv-00147-F Document 23 Filed 09/19/16 Page 12 of 15

The ALJ found that Plaintiff has a moderate restriction in activities of daily living. *Id.* Plaintiff is independent in self-care. *Id.* On her "bad" days, she stays in bed, but on her "good" days, she dresses, spends time inside and outside, shares time with her husband and two grown children. *Id.* Plaintiff's husband and children do the cooking and household chores. *Id.*

The ALJ found that Plaintiff has moderate difficulties in social functioning. *Id.* Plaintiff is able to attend her medical appointments without difficulty. *Id.* Plaintiff's husband reported that Plaintiff can drive independently, shop with someone accompanying her, and visit with family and friends. *Id.* Plaintiff can interact appropriately with family, friends, and the public. *Id.*

With respect to concentration, persistence, or pace, the ALJ found that Plaintiff has moderate difficulties. *Id.* at 15. Plaintiff was able to recite her work history, including exertional demands. *Id.* Plaintiff's husband noted that Plaintiff can handle money, pay bills, and complete tasks. *Id.* Plaintiff's husband also reported that Plaintiff watches television and sometimes reads books. *Id.*

As for episodes of decompensation, the ALJ found that Plaintiff has experienced no episodes of decompensation that have been of extended duration. *Id.* Further, Plaintiff has no inpatient mental health treatment, and she only recently had an outpatient mental health intake performed. *Id.*

The ALJ found that because Plaintiff's mental impairments did not cause at least two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation, each of extended duration, the "paragraph B" criteria were not satisfied. *Id.*

The ALJ then considered the "paragraph C" criteria. *Id.* The ALJ found they were not

13

satisfied. *Id.*

The Magistrate Judge found that Plaintiff demonstrated no error with respect to the ALJ's findings as to Listing 12.06. *See* M&R [DE-20] at 12 n.4. With respect to Listing 12.04, the Magistrate Judge noted that the ALJ addressed Plaintiff's depression and anxiety and found that she was being treated with medications that helped. *Id.* at 13 (citing R. 16). Morever, there was no evidence that Plaintiff had any diminished cognitive functioning or memory dysfunction that precluded her from understanding and remembering simple instructions or maintaining adequate concentration, persistence, and pace so that she could perform simple, repetitive tasks. *Id.* (citing R. 21). The ALJ determined that Plaintiff has been capable of maintaining a reasonable level of interaction with family members and her medical providers, has never been hospitalized or required emergency treatment for depressive symptoms, stress intolerance, or sleep problems. *Id.*(citing 21). Finally, Plaintiff has only recently sought outpatient mental health treatment. *Id.*(citing 21).

This court finds that the ALJ's and Magistrate Judge's findings that Plaintiff did not meet or medically equal the severity of requirements of Listings 12.04 or 12.06 is supported by substantial evidence. Accordingly, Plaintiff's fourth objection is overruled.

## II. Conclusion

In light of the foregoing, and upon *de novo* review of the portions of the Magistrate Judge's M&R to which specific objections were filed, the court ADOPTS the findings and recommendations of the Magistrate Judge [DE-20], Plaintiff's Motion for Judgment on the Pleadings [DE-12] is DENIED, Defendant's Motion for Judgment on the Pleadings [DE-17] is ALLOWED, and the Commissioner's final decision is AFFIRMED. The Clerk is DIRECTED to

close the case.

SO ORDERED.

This, the 19th day of September, 2016.

_____
JAMES C. FOX
Senior United States District Judge